UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/19/2016

VICTOR SEBASTIAN AZOGUE, on
behalf of himself and others similarly
situated,

                                 Plaintiff,

          v.

16 FOR 8 HOSPITALITY LLC d/b/a
NUM PANG SANDWICH SHOP, 32 FOR
16 HOSPITALITY LLC d/b/a NUM
PANG SANDWICH SHOP, 8 FOR 4
HOSPITALITY LLC d/b/a NUM PANG
SANDWICH SHOP, NUM PANG
HOLDCO LLC, RATHA CHUAPOLY,
and BENJAMIN DAITZ

                                 Defendants.

No. 13-cv-7899

**ORDER & OPINION**

**ORDER GRANTING PLAINTIFF'S MOTION FOR CERTIFICATION OF
THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS
ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT,
AND APPROVAL OF ATTORNEYS' FEES**

Plaintiff, Victor Sebastian Azogue ("Plaintiff") was formerly
employed as a cook for the Defendants' restaurant chain known as Num
Pang in New York City.  On November 6, 2013, Plaintiff filed a Class
Action Complaint on behalf of former and current non-exempt (non-
managerial) workers at four Num Pang restaurant locations alleging that
Defendants violated the Fair Labor Standards Act ("FLSA") and the New
York Labor Law ("NYLL") by failing to, *inter alia*, (i) pay overtime
compensation; (ii) pay spread of hours premium; and (iii) meet the NYLL's

requirement on wage statements and wage and hour notices. ECF No. 1. As part of their class-wide settlement negotiations, the parties agreed to include non-exempt employees in three additional Num Pang locations as part of the global settlement ("Class Members").

After engaging in discovery to allow the parties to assess the claims and calculate damages, the parties reached a settlement totaling $170,000.00. Decl. of Justin Cilenti ("Cilenti Decl.") ¶¶ 16–22. The parties reached this settlement after more than one-year of independent negotiations between the parties' respective counsel. *Id.* at ¶ 22.

On February 9, 2016, this Court entered an Order preliminarily approving the settlement on behalf of the Class, conditionally certifying the settlement class, appointing Cilenti & Cooper, PLLC as Class Counsel, and authorizing notice to all Class Members. ECF No. 52.

On March 29, 2016, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees. Cilenti Decl., Ex. B (Steve Platt Decl.) ¶ 4; Cilenti Decl., Ex. C (Notice of Proposed Settlement of Collective and Class Action Lawsuit and Fairness Hearing). Only one Class Member elected to opt out of the settlement, however, the opt-out notice was untimely. Cilenti Decl., Ex. B (Steve Platt Decl.) ¶ 6.

2

On August 5, 2016, Plaintiff filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").  That same day, Plaintiff also filed a Motion for Approval of Attorneys' Fees ("Motion for Attorneys' Fees").  Defendants took no position with respect to the Motion for Final Approval and did not object to the request for attorneys' fees.

The Court held a fairness hearing on August 19, 2016.  No Class Member objected to the settlement at the hearing.

Having considered the Motion for Final Approval and the Motion for Attorneys' Fees, and the supporting declarations and affidavits, the oral argument presented at the August 19, 2016 fairness hearing, and the complete record in this matter, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

## CERTIFICATION OF THE SETTLEMENT CLASS

### I.    Final Approval of Settlement

1.    The Court certifies the following Class under Federal Rule of Civil Procedure 23(e), for settlement purposes (the "Rule 23 Class Members"): all non-exempt (non-managerial) individuals employed at the following Num Pang Establishments: (1) 16 for 8 Hospitality, LLC, (2) 32 for 16 Hospitality LLC, (3) 8 for 4 Hospitality LLC, (4) Num Pang Holdco

3

LLC, (5) 128 for 64 Hospitality LLC, (6) 256 for 128 Hospitality LLC, and (7) Num Pang Commissary LLC, from November 6, 2007 through August 21, 2015 ("Class Period").

2.      Plaintiff meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3.      Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(1) because there are approximately 465 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F. 3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members").

4.      This case involves several common factual and legal issues, including whether among Plaintiff and Class Members Defendants: (i) failed to pay overtime compensation; (ii) failed to pay spread-of-hours premium; and (iii) failed to meet the NYLL's requirement on wage statements and wage and hour notices.  These alleged wage and hour violations – involving common operative facts stemming from corporate policies that affected Class Members in the same way – are sufficient to meet Rule 23(a)'s commonality factors. *See Campos v. Good*, No. 10-cv-0224, 2010 U.S. Dist. LEXIS 139131, at *4-5 (S.D.N.Y. Nov. 29, 2010) (commonality satisfied where restaurant workers raised overtime, tip misappropriation, spread of hours and uniform claims); *deMunecas v. Bold Food, LLC*, No. 09-cv-440, 2010 U.S. Dist. LEXIS 87644, at *5 (S.D.N.Y. Aug. 23, 2010) (commonality satisfied where restaurant

4

workers raised, *inter alia*, tip misappropriation, spread of hours and uniform claims).

5.     Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-cv-8472, 2013 U.S. Dist. LEXIS 42681, at *8–9 (S.D.N.Y. Mar. 21, 2013) (typicality satisfied where "[p]laintiffs' [overtime claims] arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims").

6.     Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Plaintiff's and Class Members' interests are at odds. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds).

7.     In addition, Plaintiff's counsel, Cilenti & Cooper, PLLC ("Class Counsel") also meet Rule 23(a)(4)'s adequacy requirement. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011).

8.     Plaintiff also satisfies Rule 23(b)(3).     Plaintiff's common factual allegations and common legal theory—that Defendants' violated federal and state wage and hour laws—predominate over any factual or legal variations among Class Members. *See Capsolas v. Pasta Res. Inc.*,

5

No. 10-cv-5595, 2012 U.S. Dist. LEXIS 144651, at *9 (S.D.N.Y. Oct. 5, 2012) (common issues predominate where employer allegedly used tips to pay salaries and failed to pay spread of hours premium); *Shahriar,* 659 F.3d at 253 (upholding the district court's decision that class-wide issues predominated in a FLSA case regarding company pay policies)

9.     Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008).

## APPROVAL OF THE SETTLEMENT AGREEMENT

10.     The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11.     Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e).     To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F. 3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank,* 236 F. 3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974),

*abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F. 3d 43 (2d Cir. 2000).

12.    Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *See Wal-Mart*, 396 F. 3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02-cv-8238, 2005 U.S. Dist. LEXIS 10848, at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in light of class actions.").

13.    A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F. 3d at 116 (internal quotation marks and citation omitted). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

### *Procedural Fairness*

14.    The proposed settlement is procedurally fair because it was reached through vigorous, arm's length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Toure v. Amerigroup Corp.*, No. 10-cv-5391, 2012 U.S. Dist. LEXIS 110300, at *7–8 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate and not a product of collusion"

7

after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator").

15.     Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in targeted discovery with Defendants, and reached a settlement after more than one year of negotiations between Class Counsel and counsel for Defendants.  Cilenti Decl. ¶¶ 16–22.

16.     These arm's length negotiations involved counsel well versed in wage and hour law, "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." *Wal-Mart*, 396 F. 3d at 116; *see also McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-8713, 2010 U.S. Dist. LEXIS 18913, at *10–11 (S.D.N.Y. Mar. 3, 2010).

17.     In addition, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693, 2013 U.S. Dist. LEXIS 144327, at *14 (S.D.N.Y. Oct. 2, 2013) (endorsing early settlement of wage and hour class action).

### *Substantive Fairness*

18.     The settlement is substantively fair.  All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating

8

the substantive fairness of a class action settlement, weigh in favor of final approval.

19.    The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell*, 495 F. 2d at 448, 463 (2d Cir. 1974).

20.    Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs on favor of final approval.

21.    The class's reaction to the settlement was positive.    The Notice sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award. The Notice also informed Class Members of their right to object or exclude themselves from the settlement and explained how to do so. Only one Class Member opted out of the settlement, and that objection was untimely submitted. This favorable response demonstrates that the class approves of the settlement, which further supports final approval.    *See Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 U.S. Dist. LEXIS 21102, at *10–11

(E.D.N.Y. Feb. 18, 2011) (approving settlement where 2,025 class members objected and two requested exclusion); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207, 2010 U.S. Dist. LEXIS 79679, at *8 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Khait v. Whirlpool Corp.*, No. 06-cv-6381, 2010 U.S. Dist. LEXIS 4067, at *16–17 (E.D.N.Y. Jan. 20, 2010) (approving class settlement where no class members objected and two opted out).

22.   The Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodiu Antitrust Litig.*, 391 F. 3d 516, 537 (3d Cir. 2004).  The Parties engaged in targeted discovery to allow the Parties to assess the claims and calculate damages in advance of mediation and settlement discussions.  Defendants produced voluminous wage and hour records. Cilenti Decl. ¶ 17.  These documents included records of dates of employment, time entries of hours worked, and payroll records, of Plaintiff and Class Members employed at the Num Pang Establishments in question.  Cilenti Decl. ¶ 18.  Plaintiff's Counsel analyzed this information and created formulas to calculate the damages Defendants owed Plaintiff and the Class Members for each claim.  Cilenti Decl. ¶ 19. In addition to reviewing these documents and those provided by Plaintiff,

Plaintiff's Counsel also conducted legal research on the underlying merits of Plaintiff's and Class Members' claims and the damages to which they were entitled.  *Id.*  Plaintiff's Counsel conferred with Defendants' counsel regarding the data available for damages calculations and consulted with Plaintiff to verify Defendants' records.  Cilenti Decl. ¶ 20.

23.     The risk of establishing liability and damages further weighs in favor if final approval.  "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  Here, Plaintiff faces risks as to both liability and damages.   For example, Plaintiff would have to overcome Defendants' various defenses.  While Plaintiff believes he could ultimately establish both liability and damages, this would require significant factual development.  Plaintiff's Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of trial, and the potential appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  Thus, these factors also weigh in favor of preliminary approval.

24.     The risk of obtaining and maintaining class certification through trial is also present.  Contested class certification motions would likely require extensive discovery and briefing.  Defendants would also

11

likely challenge the collective action certification by seeking to decertify the class at a later date, after the close of discovery. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

25.    Even if Defendants could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Corp.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citation omitted). Therefore, the seventh *Grinnell* factor is neutral and does not preclude the Court from granting final approval.

26.    The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Id.* (citation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972)). The eighth and ninth *Grinnell* factors weigh in favor of final approval.

## **APPROVAL OF THE FLSA SETTLEMENT**

27.   The Court hereby approves the FLSA settlement.

28.   Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suit at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F. 2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also McMahon*, 2010 U.S. Dist. LEXIS 18913, at *15–16. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

29.   Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F. 2d 1350, 1353, n. 8 (11th Cir. 1982); *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *15. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *See Lynn's Food Stores*, 679 F. 2d at 1353–54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354.

30.   In this case, the settlement was the result of arm's-length negotiation involving vigorous settlement negotiations. Cilenti Decl. ¶¶ 16-22. During the entire process, the parties were represented by

13

counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.

## DISSEMINATION OF NOTICE

31.     Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlement, and to appear at the fairness hearing conducted on August 19, 2016. Class Members were provided with the best notice practicable under the circumstances.

32.     The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

33.     The Court confirms American Legal Claim Services LLC as the claims administrator.

## AWARD OF FEES TO CLASS COUNSEL

34.     On February 9, 2016, the Court appointed Cilenti & Cooper, PLLC as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g). *See Damassia,* 250 F.R.D. at 165 (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action . . . counsel's

experience in handling class actions, other complex litigation, and claims of the type asserted in the action...counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

35.    Class Counsel are experienced employment lawyers with good reputations among the employment law bar.

36.    The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests.    Class Counsel has committed substantial resources to prosecuting this case.

37.    The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $56,660, which is 33.33% of the settlement fund.

38.    The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one.  *See Wal-Mart*, 396 F. 3d at 121; *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *24–25.

39.    Although the Court has discretion to award attorneys' fees based on the lodestar method or percentage-of-recovery method, *see McDaniel v. County of Schenectady*, 595 F. 3d 411, 417 (2d Cir. 2010), in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *19–20. The FLSA and NYLL are remedial statutes, the purpose of which are

15

served by adequately compensating attorneys who protect wage and hour rights. *Id.* at *19.

40.   Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Hernandez*, 2013 U.S. Dist. LEXIS 42681, at *24.   If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.*

41.   Class Counsel's request for one-third of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary*, 2013 U.S. Dist. LEXIS 144327, at *26.

42.   Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F. 3d 182 (2d Cir. 2007) does not address a common fund fee petition, it supports Class Counsel's request for one-fifth of the Fund because "reasonable, paying client[s] . . . typically pay one-third of their recoveries under private retainer agreements." *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *21. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports the percentage of the fund method. *Hernandez*, 2013 U.S. Dist. LEXIS 42681, at *25.

43.   In addition, in Plaintiff's retainer agreement with Class Counsel, Plaintiff agreed that Class Counsel could apply to the Court for 35% of a class-wide recovery and that they would pay Class Counsel 35%

16

of any individual recovery.   Cilenti Fees Decl. ¶ 8.   This also provides support for Class Counsel's request for 33.33% of the Fund.

44.   No Class Member objected to Class Counsel's request for 33.33% of the Fund, which also provides support for Class Counsel's fee request.

45.   All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43, 48–49 (2d Cir. 2000) weigh in favor of the requested fee award.

46.   Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee that Class Counsel seeks is reasonable. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. at 481.   The Court has considered the hourly rates and hours expended by Class Counsel in this matter and finds them reasonable. Based on such rates and hours, Class Counsel is seeking to recover less than their lodestar.

47.   The attorneys' fees shall be paid from the Settlement Fund.

48.   The "Effective Date" shall be the date that all of the following have occurred:

(A)   The Court has entered a Final Order; <u>and</u>

(B)   The later of:

(1)   31 days after the Court enters a Final Order if no reconsideration or rehearing is sought or no notice of appeal from the Final Order is filed.

17

(2)   If rehearing or reconsideration is sought, after any and all avenues of rehearing or reconsideration have been exhausted and no further rehearing or reconsideration is permitted, and the time for seeking such review has expired, and the Final Order has not been modified, amended or reversed in any way.

(3)   If an appeal of the Final Order has been timely filed, the date the Final Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review or the date the appeal or other judicial review are finally dismissed with no possibility of subsequent appeal or other   judicial review.

49.    Within 14 days after the Effective Date the Defendants shall deposit into the Settlement Fund Account, to be established by the Claims Administrator, a sum equal to $170,000.

50.    Within thirty (30) calendar days of the Effective Date, the Claims Administrator will distribute the money in the Settlement Fund Account by making the following payments:

(1)   Paying Class Counsel the Court-approved Attorneys' Fees; and

(2)   Paying Class Members (who did not opt-out) their Individual Settlement Payment.

51.    Each Class Member shall have until the end of the Acceptance Period, which is 90 days from the date that the Claims Administrator mails the Settlement Check, to sign, cash, deposit, or otherwise negotiate their Settlement Checks equal to their Individual Settlement Payment.

52.    If any Settlement Check to a Class Member is not deposited or cashed, or otherwise negotiated, by the end of the Acceptance Period,

18

the Settlement Check will be null and void and the Claims Administrator shall immediately put a stop payment on any such Settlement Check.

53.   As of the end of the Acceptance Period, an amount equal to Seventy-Five Percent (75%) of each un-deposited or un-cashed Settlement Check to Class Members, whether due to the Claims Administrator's inability to locate such Class Members or otherwise, shall remain the property of the Defendants and shall be immediately returned to Defendants via return wire transfer to the account from which the Settlement Fund Account was funded.  The remaining Twenty-Five Percent (25%) shall be distributed among the Settling Class Members on a *pro-rata* basis, consistent with Schedule 1 attached to the Parties' Joint Motion for Preliminary Approval.

54.   The Court retains jurisdiction over this case for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds.  The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

55.   Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who have not excluded themselves from the settlement, and all FLSA Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

SO ORDERED.

Dated:  New York, New York
        August 19, 2016

Thomas P. Griesa
United States District Judge